Robert Green (SBN 136183)
James Robert Noblin (SBN 114442)
Emrah M. Sumer (SBN 329181)
**GREEN & NOBLIN**
2200 Larkspur Landing Circle
Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email:  gnecf@classcounsel.com

William B. Federman*
Oklahoma Bar No. 2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email:  wbf@federmanlaw.com

*Pro Hac Vice* application to be submitted

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christine Hellyer, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Smile Brands, Inc., and Castle 1st Dental Care, P.A. d/b/a BrightNow! Dental – Crystal River,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Christine Hellyer ("Ms. Hellyer" or "Plaintiff Hellyer"), individually and on behalf of all others similarly situated, for her Class Action Complaint, brings this action against Defendant Smile Brands, Inc. ("Smile Brands") and Defendant Castle 1st Dental Care, P.A. d/b/a BrightNow! Dental – Crystal River ("Castle 1st") based on personal knowledge and the investigation of counsel and alleges as follows:

## I.   INTRODUCTION

1.   With this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff and the approximately two hundred thousand (200,000) identified other similarly situated persons in the massive and preventable ransomware attack that took place on or around April 24, 2021, by which cyber criminals infiltrated Defendants' inadequately protected network servers where highly sensitive personal and medical information was being kept unprotected ("Data Breach" or "Breach").[1]

2.   The cybercriminals gained access to certain of Defendants' network servers with the apparent intention of profiting from such access.

3.   Defendant Smile Brands, based in Irvine, California, advertises itself as "one of the largest providers of dental support services in the United States."[2]

4.   Defendant Smile Brands "supports nearly 700 affiliated practices, with more than 7,500 dedicated team members across 30 states." Additionally, "it supports a portfolio of 75 brands including well-known regional brands [including] BrightNow! Dental."

---

[1] *See* https://www.ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed November 14, 2021) (showing 199,683 individuals affected by the Smile Brands, Inc. data breach); https://smilebrands.com/pressrelease/smile-brands-and-johnson-family-dental-announce-new-dental-office-in-paso-robles-ca/ (last accessed November 14, 2021).
[2] *Id.*

5.     Defendant Castle 1st is a Florida-owned dental and orthodontics facility that has a relationship with Defendant Smile Brands for dental support services, which includes storage of highly sensitive patient personal and medical information.

6.     Plaintiff and Class members were required, as patients of Defendants, to provide Defendants with their "Personal and Medical Information" (defined below), with the assurance that such information would be kept safe from unauthorized access. By taking possession and control of Plaintiff's and Class members' Personal and Medical Information, Defendants assumed a duty to securely store and protect the Personal and Medical Information of Plaintiff and the Class.

7.     Defendants breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal and Medical Information, thus enabling cybercriminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

8.     The Personal and Medical Information compromised includes names, addresses, dates of birth, telephone numbers, health insurance information, diagnosis information, and Social Security numbers.[3]

9.     Defendants' misconduct – failing to timely implement adequate and reasonable measures to protect Plaintiff's Personal and Medical Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that they did not have adequate security practices in place to safeguard the Personal and Medical Information, and failing to honor their promises and representations to protect Plaintiff's and Class members' Personal and Medical Information – caused

---

[3] *See* Sample Notice Letter, https://oag.ca.gov/ecrime/databreach/reports/sb24-544924 (last accessed November 15, 2021).

CLASS ACTION COMPLAINT

substantial harm and injuries to Plaintiff and Class members across the United States.

10.　Due to Defendants' negligence and data security failures, cyber criminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of hundreds of thousands of individuals for decades to come.

11.　As a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal and Medical Information has been released into the criminal cyber domains, Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal and Medical Information. Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

12.　Plaintiff brings this action individually and on behalf of the Class and seeks actual damages, statutory damages, punitive damages, and restitution, with attorney fees, costs, and expenses, and further sues Defendants for, among other causes of action, negligence Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, Defendants-funded long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II.　THE PARTIES

13.　Plaintiff Christine Hellyer is a citizen and resident of the State of Florida.

14.　Ms. Hellyer was a patient of, and received medical services from Defendants. Her Personal and Medical Information was within the possession and control of Defendants at the time of the Data Breach.

-3-

15.     Plaintiff received a letter from Defendants dated September 28, 2021, informing her that her Personal and Medical Information was involved in the Data Breach. *See* **Exhibit 1**, the "Notice."

16.     As required in order to obtain medical services from Defendants, Plaintiff provided Defendants with highly sensitive personal, financial, health, and insurance information.

17.     Because of Defendants' negligence leading up to and including the period of the Data Breach, Plaintiff's Personal and Medical Information is now in the hands of cyber criminals and Plaintiff is under an imminent and substantially likely risk of identity theft and fraud, including medical identity theft and medical fraud.

18.     The imminent risk of medical identity theft and fraud that Plaintiff and Class members now face is substantial, certainly impending, and continuous and ongoing because of the negligence of Defendants, which negligence led to the Data Breach. Plaintiff and Class members have already been forced to spend time responding to, and attempting to mitigate the harms of, the Data Breach in an effort to determine how best to protect themselves from certainly impending identity theft and medical information fraud. These efforts are continuous and ongoing and will be for years to come.

19.     As a direct and proximate result of the Data Breach, Plaintiff and the Class will be required to purchase a yearly subscription to identity theft protection. The purchase of identity theft protection and credit monitoring will be necessary in order to protect themselves from medical identity theft and other types of fraud, of which they are now substantially at risk. This subscription will need to be renewed yearly for the rest of their lives.

20.     Plaintiff and Class members have also suffered injury directly and proximately caused by the Data Breach, including damages and diminution in value of their Personal and Medical Information that was entrusted to Defendants

for the sole purpose of obtaining medical services necessary for their health and well-being, with the understanding that Defendants would safeguard this information against disclosure. Additionally, Plaintiff's and Class members' Personal and Medical Information is at continued risk of compromise and unauthorized disclosure as it remains in the possession the cybercriminals who carried out the Data Breach and of Defendants, and is thus subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect it.

21.     As part of its business, Defendant collects substantial amounts of Personal and Medical Information. The medical information that Defendants collect qualifies as "Medical Information" under the federal Health Information Portability and Accountability Act ("HIPAA") and other state medical record protection acts.

## III.   JURISDICTION AND VENUE

22.     This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs and, upon information and belief, the Class includes members who are citizens of states that differ from Defendants.

23.     This Court has personal jurisdiction over Defendant Smile Brands because Defendant Smile Brands conducts much of its business[4] in and has sufficient minimum contacts with California.

24.     This Court has personal jurisdiction over Defendant Castle 1st because Defendant Castle 1st has sufficient minimum contacts with California and affiliated itself with Defendant Smile Brands,[5] an advertised California

_____

[4] Supra ¶ 3.
[5] Exhibit 1 (showing Defendant Castle 1st as one of nearly seventy (70) affiliated practices of Defendant Smile Now).

headquartered company, for the privacy and security of its patients' highly sensitive personal and medical information, and could reasonably anticipate being haled into court in California.

25.     Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendant Smile Brands headquarters are located in this District and it conducts much of its business through this District (including promoting, selling, marketing, and distributing the Smile Brands services at issue).

## IV.    FACTUAL ALLEGATIONS

### A.    The California Attorney General Notice

26.     On or about April 24, 2021, Defendants' network servers were subject to a ransomware attack through which unauthorized third-party cybercriminals gained access to Plaintiff's and Class members' Personal and Medical Information.

27.     Defendant Smile Brands sent a notice of data breach letter to the California Attorney General that was dated August 9, 2021.

28.     On September 28, 2021, Defendant Castle 1st sent a notice of data breach letter to Plaintiff that was similar to the language of the Notice sent to the California Attorney General by Defendant Smile Brands.

29.     Plaintiff received notice of a "substitute notice of cybersecurity incident" by visiting Defendant Smile Brands' website. The substitute notice described the ransomware attack as having affected approximately seventy (70) of its affiliated dental groups, including Defendant Castle 1st.

30.     Plaintiff's substitute notice of cybersecurity incident outlined that Plaintiff's name, address, date of birth, telephone number, health insurance information, Social Security number, and/or diagnosis information was potentially acquired by an unauthorized third party via the ransomware attack.

31.     As a result of the Data Breach notice, Plaintiff Hellyer spent time dealing with the consequences of the Data Breach, which includes time spent

-6-

verifying the legitimacy of the notice, exploring credit monitoring and identity theft insurance options, and self-monitoring accounts. This time has been lost forever and cannot be recaptured.

32.     Additionally, Plaintiff Hellyer is very careful about sharing her sensitive Personal and Medical Information. She has never knowingly transmitted unencrypted sensitive Personal and Medical Information over the internet or any other unsecured source.

33.     Plaintiff Hellyer has suffered actual injury in the form of damages to and diminution in value of her Personal and Medical Information: a form of intangible property that Plaintiff Hellyer entrusted to Defendants for the purpose of obtaining services from Defendants, which was compromised in and as a result of the Data Breach.

34.     Plaintiff Hellyer suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy.

35.     Plaintiff Hellyer has suffered present and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from the Data Breach, especially the loss of Social Security number, in combination with her name, being placed in the hands of unauthorized third parties and possibly criminals.

36.     Plaintiff has a continuing interest in ensuring that her Personal and Medical Information, which upon information and belief, remains backed up in Defendants' possession, is protected and safeguarded from future breaches.

37.     Plaintiff has suffered actual injury from having her Personal and Medical Information exposed as a result of the Data Breach including, but not limited to: (a) loss of privacy; (b) present and impending injury arising from the increased risk of fraud and identity theft; and (c) loss of the benefit of her bargain with Defendants.

38.     As a direct and proximate result of the Data Breach, Plaintiff Hellyer enrolled in Norton LifeLock identity theft protection, which costs $32.95 per month.

39.     Had Plaintiff had an expectation that her Personal and Medical Information could be exposed to unauthorized third parties, she would have sought medical treatment from a different provider.

40.     As a result of the Data Breach, Plaintiff Hellyer will continue to be at heightened risk for financial fraud, identity theft, other forms of fraud, and the attendant damages, for years to come.

41.     Plaintiff's and Class members' unencrypted personal information was acquired by an unauthorized cybercriminal or cybercriminals as a result of the Data Breach.

42.     The security, confidentiality, or integrity of Plaintiff's and Class members' unencrypted personal information was compromised as a result of the Data Breach.

43.     Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

44.     It is reasonable to infer that Plaintiff's and Class members' unencrypted personal information that was acquired by an unauthorized person as a result of the Data Breach was viewed by unauthorized persons.

45.     After receiving letters similar to those sent pursuant to California Civ. Code § 1798.82(a)(1) – and filed with the Attorney General of California in accordance with California Civ. Code § 1798.82(f) – it is reasonable for recipients, including Plaintiff and Class members in this case, to (i) believe that the risk of future harm (including identity theft) is real and imminent, and (ii) take steps to mitigate that risk of future harm.

**B.     The Data Breach and Defendants' Failed Response**

46.     It is apparent from the various notices and sample notices of the Data Breach sent to Plaintiff, the Class, and state Attorneys General that the Personal and Medical Information contained on Defendants' servers was not encrypted.

47.     Following discovery of the Data Breach, Defendants began to investigate and address the Data Breach. Based upon the investigation, the attackers were able to access certain network servers containing the Personal and Medical Information at issue, which was being held, unencrypted and unprotected.

48.     Upon information and belief, the unauthorized third-party cybercriminals gained access to the Personal and Medical Information with the intent of engaging in misuse of the Personal and Medical Information, including marketing and selling Plaintiff's and Class members' Personal and Medical Information on the dark web.

49.     In spite of the severity of the Data Breach, Defendants have done very little to protect Plaintiff and the Class. For example, in the Notice, Defendants only provide twelve (12) months of identity theft and credit monitoring protection to Data Breach victims.

50.     In effect, Defendants are shirking their responsibility for the harm and increased risk of harm they have caused Plaintiff and members of the Class, including the distress and financial burdens the Data Breach has placed upon the shoulders of the Data Breach victims.

51.     The Notice fails to provide the consolation Plaintiff and Class members seek and certainly falls far short of eliminating the substantial risk of fraud and identity theft Plaintiff and the Class now face.

52.     Ransomware creators, such as the authors of Defendants' Data Breach, "are criminals without any ethics," so there is no guarantee they will do what they promise to do in exchange for any ransom money they receive.[6]

53.     To make matters worse, Defendants' attackers actually gained access to, and possession of, Plaintiff's and Class members' Personal and Medical Information. While many ransomware attacks merely involve the attacker gaining control of the computer or network without access to the victims' information, the ransomware attack on Defendants' systems gave the attackers access to, and possession of, Plaintiff's and Class members' Personal and Medical Information.

54.     Moreover, paying the ransom (if Defendants did indeed pay the ransom) will only encourage attackers to carry out these types of cyberattacks on Defendants' system networks in the future.

55.     Defendants failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information, with virtually no offer of remedy or relief while failing to spend sufficient resources on cybersecurity training and adequate data security measures and protocols.

56.     Defendants had obligations created by HIPAA, reasonable industry standards, common law, state statutory law, and its own assurances and representations to keep patients' Personal and Medical Information confidential and to protect such Personal and Medical Information from unauthorized access.

57.     Plaintiff and Class members were required to provide their Personal and Medical Information to Defendants with the reasonable expectation and mutual understanding that Defendants would comply with its obligations to keep such information confidential and secure from unauthorized access.

---

[6] https://enterprise.comodo.com/does-paying-ransomware-work.php (last accessed November 15, 2021).

58.     The stolen Personal and Medical Information at issue has great value to the ransomware attackers, due to the large number of individuals affected and the fact that health insurance information, clinical information, and Social Security numbers were part of the data that was compromised.

**C.      Defendants had an Obligation to Protect Personal and Medical Information under Federal Law and the Applicable Standard of Care**

59.     Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, each are required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

60.     HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

61.     HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

62.     HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

63.     "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

/////

/////

64.     HIPAA's Security Rule requires Defendants to do the following:

a.      Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b.      Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c.      Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d.      Ensure compliance by their workforce.

65.     HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e), and to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

66.     Moreover, the HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414 requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[7]

67.     Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an

---

[7] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added) (last accessed November 15, 2021).

"unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

68.     In addition to its obligations under federal and state laws, Defendants owed a duty to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiff and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected the Personal and Medical Information of the Class.

69.     Defendants owed a duty to Plaintiff and the Class to design, maintain, and test its computer systems and networks to ensure that the Personal and Medical Information in its possession was adequately secured and protected.

70.     Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in its possession.

71.     Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its data security systems in a timely manner.

72.     Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

73.     Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendants.

/////

74.     Defendants owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

75.     Defendants owed a duty to Plaintiff and the Class to encrypt Plaintiff's and Class members' Personal and Medical Information and monitor user behavior and activity in order to identity possible threats.

**D.     Defendants were on Notice of Cyber Attack Threats in the Healthcare Industry and of the Inadequacy of its Data Security**

76.     Defendants were on notice that companies in the healthcare industry were targets for cyberattacks.

77.     Defendants were on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[8]

78.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that

---

[8] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idINKBN0GK24U20140820 (last accessed November 15, 2021).

cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[9]

79.     As implied by the above quote from the AMA, stolen Personal and Medical Information can be used to interrupt important medical services themselves. This is an imminent and certainly impending risk for Plaintiff and Class members.

80.     Defendants were on notice that the federal government has been concerned about healthcare company data encryption. Defendants knew they kept protected health information on its servers and yet it appears Defendants did not encrypt this information.

81.     The United States Department of Health and Human Services' Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[10]

82.     As a covered entity under HIPAA, Defendants should have known their systems were prone to ransomware and other types of cyberattacks and

_____

[9] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last accessed November 15, 2021).

[10] "Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html (last accessed November 15, 2021).

sought better protection for the Personal and Medical Information accumulating in its system networks.

**E.     Cyber Criminals Will Use Plaintiff's and Class Members'
Personal and Medical Information to Defraud Them**

83.     Plaintiff and Class members' Personal and Medical Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

84.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[11] For example, with the Personal and Medical Information stolen in the Data Breach, including Social Security numbers and, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[12] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

/////

/////

/////

/////

---

[11]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity") (last accessed November 15, 2021).

[12]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (last accessed November 15, 2021).

85.     For example, it is believed that certain Personal and Medical Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[13]

86.     This was a financially motivated Data Breach, as apparent from the ransom money sought by the cyber criminals, who will continue to seek to profit off of the sale of Plaintiff's and the Class members' Personal and Medical Information on the dark web. The Personal and Medical Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

87.     These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[14]

88.     Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[15]

89.     For instance, with a stolen Social Security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone

---

[13] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/ (last accessed November 15, 2021).

[14] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info (last accessed November 15, 2021).

[15] *Data Breaches Are Frequent*, *supra* note 11.

can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[16] Identity thieves can also use the information stolen from Plaintiff and Class members to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

90.     Medical identity theft is one of the most common, most expensive, and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[17]

91.     "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[18]

92.     As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where [personal health information] can go from $20 say up to—we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[19] A complete

---

[16] *See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/ (last accessed November 15, 2021).

[17] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed November 15, 2021).

[18] *Id.*

[19] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idx.us/knowledge-

identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[20]

93.    If cyber criminals manage to access financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendants may expose the Plaintiff and Class members.

94.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[21]  Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[22]

95.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[23]

---

center/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat (last accessed November 15, 2021).
[20]*Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf (last accessed November 15, 2021).
[21] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed November 15, 2021).
[22] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/ (last accessed November 15, 2021).
[23] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf (last accessed November 15, 2021).

96.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the future negative impacts to their credit because of the Data Breach.[24]

97.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

98.     Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

        a.     Trespass and damage their personal property, including Personal and Medical Information;

        b.     Improper disclosure of their Personal and Medical Information;

        c.     The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals;

        d.     The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

        e.     Loss of privacy suffered as a result of the Data Breach;

---

[24] *Id.*

f.   Ascertainable losses in the form of the value of their time reasonably expended to remedy or mitigate the effects of the Data Breach;

g.   Ascertainable losses in the form of deprivation of the value of patients' personal information, for which there is a well-established and quantifiable national and international market; and

h.   The loss of use of and access to their credit, accounts, and/or funds.

99.   Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants have proven themselves to be wholly incapable of protecting Plaintiff's and Class members' Personal and Medical Information.

100.   Plaintiff and Class members are desperately trying to mitigate the damage that Defendants have caused them but, given the kind of Personal and Medical Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal and Medical Information, Plaintiff and all Class members will need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[25]

---

[25]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html (last accessed November 15, 2021).

101.   None of this should have happened. The Data Breach was preventable.

### F.   Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal and Medical Information

102.   Data breaches are preventable.[26] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[27] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[28]

103.   "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures … Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[29]

104.   Defendants required Plaintiff and Class members to surrender their Personal and Medical Information – including but not limited to their names, addresses, driver's licenses, Social Security numbers, medical information, and health insurance information – and was entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal and Medical Information.

---

[26]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012)
[27]*Id.* at 17.
[28]*Id.* at 28.
[29]*Id.*

105.   Many failures laid the groundwork for the success ("success" from the cybercriminals' viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security protections, procedures and protocols necessary to safeguard Plaintiff's and Class members' Personal and Medical Information.

106.   Defendants maintained the Personal and Medical Information in a reckless manner on network servers that were left vulnerable to cyberattacks.

107.   Defendants knew of the importance of safeguarding Personal and Medical Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal and Medical Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach of this magnitude.

108.   The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal and Medical Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal and Medical Information from those risks left that information in a dangerous condition.

109.   Defendants disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that their network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal and Medical Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

110.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

111.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23. Plaintiff asserts all claims on behalf of the proposed Nationwide Class and Florida Subclass, defined as follows:

> **All persons residing in the United States whose personal and medical information was compromised as a result of the Smile Brands Data Breach that occurred in April 2021.**
>
> **Florida Subclass: All persons residing in Florida whose personal and medical information was compromised as a result of the Smile Brands Data Breach that occurred in April 2021.**

112.    Also, in the alternative, Plaintiff requests additional Subclasses as necessary based on the types of Personal and Medical Information that were compromised.

113.    Excluded from the Nationwide Class and Florida Subclass are Defendants, any entity in which Defendants have a controlling interest, and Defendants' officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

114.    Plaintiff reserves the right to amend the above definitions or to propose alternative or additional Subclasses in subsequent pleadings and motions for class certification.

115.    The proposed Nationwide Class and the Florida Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

116.   **Numerosity:** The proposed Class is believed to be so numerous that joinder of all members is impracticable. The proposed Florida Subclass is also believed to be so numerous that joinder of all members would be impractical.

117.   **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal and Medical Information compromised in the same way by the same conduct of Defendants. Plaintiff and all members of the Class face the identical threats resulting from the breach of their Personal and Medical Information without the protection of encryption and adequate monitoring of user behavior and activity necessary to identity those threats.

118.   **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Florida Subclass that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

119.   **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments.

CLASS ACTION COMPLAINT

Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

120. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a. Whether Defendants engaged in the wrongful conduct alleged herein;

b. Whether Defendants failed to adequately safeguard Plaintiff's and Class members' Personal and Medical Information;

c. Whether Defendants' systems, networks, and data security practices used to protect Plaintiff's and Class members' Personal and Medical Information violated the FTC Act, HIPAA, and/or Defendant's other duties discussed herein;

d. Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Personal and Medical Information, and whether they breached this duty;

e. Whether Defendants knew or should have known that their computer and network security systems were vulnerable to a data breach;

f. Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g. Whether Defendants breached contractual duties to Plaintiff and the Class to use reasonable care in protecting their Personal and Medical Information;

h.    Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.    Whether Defendants continue to breach duties to Plaintiff and the Class;

j.    Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class and the general public;

m.    Whether Defendants' actions alleged herein constitute gross negligence; and

n.    Whether Plaintiff and Class members are entitled to punitive damages.

## VI.   CAUSES OF ACTION

### A.   COUNT I – NEGLIGENCE

121.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

122.   Defendants solicited, gathered, and stored the Personal and Medical Information of Plaintiff and the Class as part of the operation of its business.

123.   Upon accepting and storing the Personal and Medical Information of Plaintiff and Class members, Defendants undertook and owed a duty to Plaintiff

and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

124.   Defendants had full knowledge of the sensitivity of the Personal and Medical Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal and Medical Information was wrongfully disclosed, and the importance of adequate security.

125.   Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices. Plaintiff and the Class members had no ability to protect their Personal and Medical Information that was in Defendants' possession. As such, a special relationship existed between Defendant and Plaintiff and the Class.

126.   Defendants were well aware of the fact that cyber criminals routinely target large corporations through cyberattacks in an attempt to steal sensitive personal and medical information.

127.   Defendants owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data.

128.   Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

129.   Defendants had duties to protect and safeguard the Personal and Medical Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive

Personal and Medical Information. Additional duties that Defendants owed

Plaintiff and the Class include:

      a.      To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendant's networks, systems, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal and Medical Information was adequately secured from impermissible access, viewing, release, disclosure, and publication;

      b.      To protect Plaintiff's and Class members' Personal and Medical Information in its possession by using reasonable and adequate security procedures and systems;

      c.      To implement processes to quickly detect a data breach, security incident, or intrusion involving their networks and servers; and

      d.      To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal and Medical Information.

130.   Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Personal and Medical Information that Plaintiff and the Class had entrusted to it.

131.   Defendants breached their duties of care by failing to adequately protect Plaintiff's and Class members' Personal and Medical Information. Defendants breached its duties by, among other things:

      a.      Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession;

b.     Failing to protect the Personal and Medical Information in its possession using reasonable and adequate security procedures and systems;

c.     Failing to adequately train their employees to not store Personal and Medical Information longer than absolutely necessary;

d.     Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class' Personal and Medical Information;

e.     Failing to implement processes to quickly detect data breaches, security incidents, or intrusions; and

f.     Failing to encrypt Plaintiff's and Class members' Personal and Medical Information and monitor user behavior and activity in order to identity possible threats.

132.   Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

133.   As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

134.   Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Personal and Medical Information of Plaintiff and Class members from being stolen and misused, Defendants unlawfully breached its duty to use reasonable care to adequately protect and secure the Personal and Medical Information of Plaintiff and Class members while it was within Defendants' possession and control.

135.   As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, closely reviewing and

monitoring bank accounts, credit reports, and statements sent from providers and their insurance companies and the payment for credit monitoring and identity theft prevention services.

136.   Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

137.   The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

138.   In addition to its duties under common law, Defendants had additional duties imposed by statute and regulations . The harms which occurred as a result of Defendant's failure to observe these duties, including the loss of privacy, significant risk of identity theft, and Plaintiff's overpayment for goods and services, are the types of harm that these statutes and their regulations were intended to prevent.

139.   Defendants gathered and stored the Personal and Medical Information of Plaintiff and the Class as part of their business of soliciting its services to their patients, which solicitations and services affect commerce.

140.   Defendants breached their duties to Plaintiff and the Class by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal and Medical Information, and by failing to provide prompt notice without reasonable delay.

141.

142.   Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

## B.   COUNT II – INVASION OF PRIVACY

143.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

/////

144.   California established the right to privacy in Article 1, Section 1 of the California Constitution.

145.   The State of California recognizes the tort of Intrusion into Private Affairs and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states, "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts, § 652B (1977).

146.   Plaintiff and Class members had a legitimate and reasonable expectation of privacy with respect to their Personal and Medical Information and were accordingly entitled to the protection of this information against disclosure to and acquisition by unauthorized third parties.

147.   Defendants owed a duty to their patients, including Plaintiff and Class members, to keep their Personal and Medical Information confidential.

148.   The unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing of Personal and Medical Information, especially the type that is the subject of this action, is highly offensive to a reasonable person.

149.   The intrusion was into a place or thing that was private and is entitled to be private. Plaintiff and Class members disclosed their Personal and Medical Information to Defendants as part of their receiving medical care and treatment from Defendants, but privately, with the intention that such highly sensitive information would be kept confidential and protected from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing. Plaintiff and Class members were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

150.   The Data Breach constitutes an intentional interference with Plaintiff's and Class members' interest in solitude or seclusion, either as to their persons or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

151.   Defendants acted with a knowing state of mind when they permitted the Data Breach because they knew their information security practices were inadequate.

152.   Acting with knowledge, Defendants had notice and knew that their inadequate cybersecurity practices would cause injury to Plaintiff and Class members.

153.   As a proximate result of Defendants' acts and omissions, Plaintiff's and Class members' Personal and Medical Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/ or reviewed by third parties without authorization, causing Plaintiff and Class members to suffer damages.

154.   Unless and until enjoined and restrained by order of this Court, Defendants' wrongful conduct will continue to cause great and irreparable injury to Plaintiff and Class members in that the Personal and Medical Information maintained by Defendants can and will likely again be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/ or viewed by unauthorized persons.

155.   Plaintiff and the Class have no adequate remedy at law for the injuries in that a judgment for monetary damages will not end the invasion of privacy for Plaintiff and Class members.

**C.    COUNT III – BREACH OF IMPLIED CONTRACT**

156.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

/////

157.   When Plaintiff and the Class members provided their Personal and Medical Information to Defendants when seeking medical services, they entered into implied contracts in which Defendants agreed to comply with their statutory and common law duties to protect Plaintiff's and Class members' Personal and Medical Information.

158.   Defendants required Plaintiff and Class members to provide Personal and Medical Information in order to receive medical services.

159.   Defendants affirmatively represented that they collected and stored the Personal and Medical Information of Plaintiff and the members of the Class in compliance with HIPAA and other statutory and common law duties using reasonable, industry standard means.

160.   Based on this implicit understanding and also on Defendants' representations (as described above), Plaintiff and the Class accepted Defendants' offers and provided Defendants with their Personal and Medical Information.

161.   Plaintiff and Class members would not have provided their Personal and Medical Information to Defendants had they known that Defendants would not safeguard their Personal and Medical Information, as promised.

162.   Plaintiff and Class members fully performed their obligations under the implied contracts with Defendants.

163.   Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class members' Personal and Medical Information.

164.   Defendants also breached the implied contracts when they engaged in acts and/or omissions that are declared unfair trade practices by the FTC and state statutes and regulations and when they failed to comply with HIPAA and other state personal and medical privacy laws. These acts and omissions included (i) representing that they would maintain adequate data privacy and security practices and procedures to safeguard the Personal and Medical Information from unauthorized disclosures, releases, data breaches, and theft; (ii) omitting,

suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal and Medical Information; and (iii) failing to disclose to the Class at the time they provided their Personal and Medical Information that Defendants' data security system and protocols failed to meet applicable legal and industry standards.

165.   The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendants' breach of the implied contract with Plaintiff and Class members.

### D.   COUNT IV – BREACH OF CONFIDENCE

166.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

167.   At all times during Plaintiff's and Class members' interactions with Defendants, Defendants were fully aware of the confidential nature of the Personal and Medical Information that Plaintiff and Class members provided to them.

168.   As alleged herein and above, Defendants' relationship with Plaintiff and the Class was governed by promises and expectations that Plaintiff and Class members' Personal and Medical Information would be collected, stored, and protected in confidence, and would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

169.   Plaintiff and Class members provided their respective Personal and Medical Information to Defendants with the explicit and implicit understandings that Defendants would protect and not permit the Personal and Medical Information to be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties.

170.   Plaintiff and Class members also provided their Personal and Medical Information to Defendants with the explicit and implicit understandings that

Defendants would take precautions to protect their Personal and Medical Information from unauthorized access, acquisition, appropriation, disclosure, encumbrance, exfiltration, release, theft, use, and/or viewing, such as following basic principles of protecting their networks and data systems.

171.   Defendants voluntarily received, in confidence, Plaintiff's and Class members' Personal and Medical Information with the understanding that the Personal and Medical Information would not be accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by the public or any unauthorized third parties.

172.   Due to Defendants' failure to prevent, detect, and avoid the Data Breach from occurring by, inter alia, not following best information security practices to secure Plaintiff's and Class members' Personal and Medical Information, Plaintiff's and Class members' Personal and Medical Information was accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties beyond Plaintiff's and Class members' confidence, and without their express permission.

173.   As a direct and proximate cause of Defendants' actions and/or omissions, Plaintiff and Class members have suffered damages as alleged herein.

174.   But for Defendants' failure to maintain and protect Plaintiff's and Class members' Personal and Medical Information in violation of the parties' understanding of confidence, their Personal and Medical Information would not have been accessed by, acquired by, appropriated by, disclosed to, encumbered by, exfiltrated by, released to, stolen by, used by, and/or viewed by unauthorized third parties. Defendants' Data Breach was the direct and legal cause of the misuse of Plaintiff's and Class members' Personal and Medical Information, as well as the resulting damages.

/////

175.   The injury and harm Plaintiff and Class members suffered and will continue to suffer was the reasonably foreseeable result of Defendants' unauthorized misuse of Plaintiff's and Class members' Personal and Medical Information. Defendants knew their data systems and protocols for accepting and securing Plaintiff's and Class members' Personal and Medical Information had security and other vulnerabilities that placed Plaintiff's and Class members' Personal and Medical Information in jeopardy.

176.   As a direct and proximate result of Defendants' breaches of confidence, Plaintiff and Class members have suffered and will suffer injury, as alleged herein, including but not limited to (a) actual identity theft; (b) the compromise, publication, and/or theft of their Personal and Medical Information; (c) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft and/or unauthorized use of their Personal and Medical Information; (d) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (e) the continued risk to their Personal and Medical Information, which remains in Defendants' possession and is subject to further unauthorized disclosures so long as Defendants fail to undertake appropriate and adequate measures to protect Class members' Personal and Medical Information in their continued possession; (f) future costs in terms of time, effort, and money that will be expended as result of the Data Breach for the remainder of the lives of Plaintiff and Class members; and (g) the diminished value of Plaintiff's and Class members Personal and Medical Information; and (h) the diminished value of Defendants' services Plaintiff and Class members paid for and received.

/////

/////

**E.    COUNT V – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

177.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

178.   As described above, Defendants made promises and representations to Plaintiff and the Class that it would comply with HIPAA and other applicable laws and industry best practices.

179.   These promises and representations became a part of the contract between Defendants and Plaintiff and the Class.

180.   While Defendants had discretion in the specifics of how they met the applicable laws and industry standards, this discretion was governed by an implied covenant of good faith and fair dealing.

181.   Defendants breached this implied covenant when they engaged in acts and/or omissions that are declared unfair trade practices by the FTC and state statutes and regulations, and when it engaged in unlawful practices under HIPAA and other state personal and medical privacy laws. These acts and omissions included: representing that it would maintain adequate data privacy and security practices and procedures to safeguard the Personal and Medical Information from unauthorized disclosures, releases, data breaches, and theft; omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class's Personal and Medical Information; and failing to disclose to the Class at the time they provided their Personal and Medical Information to them that Defendants' data security systems and protocols, including training, auditing, and testing of employees, failed to meet applicable legal and industry standards.

182.   Plaintiff and Class members did all or substantially all significant things that the contract required them to do.

183.   Likewise, all conditions required for Defendants' performance were met.

184.   Defendants' acts and omissions unfairly interfered with Plaintiff's and Class members' rights to receive the full benefit of their contracts.

185.   Plaintiff and Class members have been harmed by Defendants' breach of this implied covenant in the many ways described above, including overpayment for services, imminent risk of certainly impending and devastating identity theft that exists now that cyber criminals have their Personal and Medical Information, and the attendant long-term time and expenses spent attempting to mitigate and insure against these risks.

186.   Defendants are liable for this breach of these implied covenants, whether or not they are found to have breached any specific express contractual term.

187.   Plaintiff and Class members are entitled to damages, including compensatory damages and restitution, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## F.     COUNT VIII – DECLARATORY RELIEF

188.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

189.   Plaintiff brings this Count under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

190.   As previously alleged, Plaintiff and members of the Class were parties to an implied contract with Defendants that required Defendant to provide adequate security for the Personal and Medical Information they collected from them.

191.   Defendants owed (and continues to owe) a duty of care to Plaintiff and the members of the Class requiring Defendants to adequately secure Personal and Medical Information.

192. Defendants still possess Plaintiff's and Class members' Personal and Medical Information.

193. Since the Data Breach, Defendants have announced few if any changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in their computer systems and/or security practices that permitted the Data Breach to occur and go undetected for months.

194. Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendants' insufficient data security is known to other ransomware attackers, the Personal and Medical Information in Defendants' possession is even more vulnerable to subsequent and continuous cyberattacks.

195. Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and members of the Class are at risk of additional or further harm due to the nature of the ransomware attack at issue, the exposure of their Personal and Medical Information, and Defendants' failure to address the security failings that led to such exposure.

196. There is no reason to believe that Defendants' security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

197. Plaintiff, therefore, seeks a declaration that Defendants' existing security measures do not comply with their contractual obligations and duties of care to provide adequate security and that, to comply with their contractual obligations and duties of care, Defendant must implement and maintain additional security measures.

/////

/////

**G.   COUNT VIII – VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201 et seq. (ON BEHALF OF PLAINTIFF AND THE FLORIDA SUBCLASS AGAINST ALL DEFENDANTS)**

198.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

199.    FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

200.    Defendants engaged in the conduct alleged in this Complaint through transactions in and involving trade and commerce. Mainly, the Data Breach occurred through the use of the internet, an instrumentality of interstate commerce.

201.    While engaged in trade or commerce, Defendants violated FDUTPA, including among other things, by:

    a.  Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect the Private Information of Defendants' patients from unauthorized access and disclosure;

    b.  Failing to disclose that its computer systems and data security practices were inadequate to safeguard and protect the Personal and Medical Information of Defendants' client patients from being compromised, stolen, lost, or misused; and

    c.  Failing to disclose the Data Breach to Defendants' client patients in a timely and accurate manner in violation of Fla. Stat. § 501.171.

202.   Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Class members' Personal and Medical Information entrusted to it, and that risk of a data breach or theft was highly likely.

203.   Defendants should have disclosed this information because they were in a superior position to know the true facts related to the defective data security.

204.   Defendants' failures constitute false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and Class members) regarding the security of Defendants' network and aggregation of Personal and Medical Information.

205.   The representations upon which impacted individuals (including Plaintiff and Class members) relied were material representations (e.g., as to Defendants' adequate protection of Personal and Medical Information), and consumers (including Plaintiff and Class Members) relied on those representations to their detriment.

206.   Defendants' actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Defendants' client patients.

207.   In committing the acts alleged above, Defendants engaged in unconscionable, deceptive, and unfair acts and practices acts by omitting, failing to disclose, or inadequately disclosing to Defendants' client patients that they did not follow industry best practices for the collection, use, and storage of Personal and Medical Information.

208.   As a direct and proximate result of Defendants' conduct, Plaintiff and other members of the Class have been harmed and have suffered damages including, but not limited to: damages arising from attempted identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and

restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

209.   As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts and omissions, Plaintiff's and Class members' Personal and Medical Information was disclosed to third parties without authorization, causing and will continue to cause Plaintiff and Class members damages. Accordingly, Plaintiff and Class members are entitled to recover actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## VII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class pray for judgment against Defendants as follows:

      a.    An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

      b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

      c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

            i.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants'

-43-

systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii.    Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

iii.    Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

iv.    Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.    Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provisions of services;

vi.    Ordering that Defendants conduct regular database scanning and securing checks; and

vii.    Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

d.    An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

CLASS ACTION COMPLAINT

e.   A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.   An award of such other and further relief as this Court may deem just and proper.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

DATED:  November 16, 2021          **GREEN & NOBLIN, P.C.**


By:    */s/ Robert S. Green*
                Robert S. Green

James Robert Noblin
Emrah M. Sumer
2200 Larkspur Landing Circle
Suite 101
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
Email:  gnecf@classcounsel.com

William B. Federman*
Oklahoma Bar No. 2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
*Email:  wbf@federmanlaw.com*