MORGAN & MORGAN COMPLEX
LITIGATION GROUP
JOHN A. YANCHUNIS (*pro hac vice*)
jyanchunis@ForThePeople.com
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 275-5272
Facsimile: (813) 222-4736

FEDERMAN & SHERWOOD
WILLIAM B. FEDERMAN (*pro hac vice*)
wbf@federmanlaw.com
10205 N. Pennsylvania Avenue
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112

KAZEROUNI LAW GROUP, APC
ABBAS KAZEROUNIAN (SBN 249203)
ak@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Plaintiffs' Interim Co-Lead Counsel*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTINE HELLYER, ANGELICA PONCE, CHARLES WARREN, DESTINEE RICHARD, and TAMMIE EDWARDS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SMILE BRANDS INC., SMILE BRANDS GROUP INC., and SMILE BRANDS FINANCE, INC.,<br><br>Defendants. | Case No.: 8:21-cv-01886-DOC-ADS<br>Hon. David O. Carter<br>Courtroom 10A<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Declarations and [Proposed] Order]<br><br>Date: January 16, 2024<br>Time: 8:30 a.m.<br>Ctrm: 10A |

## NOTICE OF MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 16, 2024, at 8:30 a.m., in Courtroom 10A of the above-captioned Court before the Honorable David O. Carter, Plaintiffs Christine Hellyer, Charles Warren, Angelica Ponce, Tammie Edwards and Destinee Richard (collectively, "Plaintiffs"), will and hereby do move for an Order granting Final Approval of the Class Action Settlement Agreement in this case, finally approving the Settlement as fair, reasonable, and adequate, and in the best interest of the Class.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Joint Declaration of John Yanchunis, William B. Federman, Abbas Kazerounian, Daniel S. Robinson, and Patrick Keegan, the Declarations of the Class Representatives, the Declaration of Meagan Brunner on behalf of Simpluris, Inc., the Class Action Settlement Agreement and Release (the "Settlement") previously filed with the Court (Dkt. 78), all papers filed in support thereof, the argument of counsel at the hearing of this Motion, all papers and records on file in this matter, and any such other matters as the Court may request or desire to consider.

Respectfully submitted,

Dated: December 18, 2023

FEDERMAN & SHERWOOD

By: /s/ *William B. Federman*
William B. Federman

Dated: December 18, 2023

MORGAN & MORGAN COMPLEX LITIGATION GROUP

By: /s/ *John A. Yanchunis*
John A. Yanchunis

Dated: December 18, 2023

KAZEROUNI LAW GROUP, APC

By: /s/ *Abbas Kazerounian*
Abbas Kazerounian

Dated: December 18, 2023          ROBINSON CALCAGNIE

                                  By: /s/ *Daniel S. Robinson*
                                  Daniel S. Robinson


Dated: December 18, 2023          KEEGAN & BAKER, LLP

                                  By: /s/ *Patrick N. Keegan*
                                  Patrick N. Keegan

                                  *Class Counsel*

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................... 1

II.     BACKGROUND ...................................................................... 2

     A.   The Data Breach and the Procedural History of this Action ............................ 2

     B.   Settlement Negotiations and Mediation ................................................ 3

     C.   Preliminary Approval and Plaintiffs' Fee Motion ....................................... 4

III.    THE TERMS OF THE SETTLEMENT .......................................... 5

     A.   The Settlement Class and Release ....................................................... 5

     B.   The Settlement Benefits ................................................................. 5

         1.   The Credit Monitoring and Identity Theft Insurance Services ............. 6

         2.   Cash Payments to Settlement Class Members ............................... 7

         3.   Smile Brands' Remedial Measures ........................................ 9

         4.   Attorneys' Fees and Costs and Service Awards ............................ 10

         5.   Total Value of the Settlement ............................................. 10

IV.    FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE ............. 11

     A.   Class Certification ..................................................................... 11

     B.   The Settlement is Fundamentally Fair, Reasonable, and Adequate ................. 11

         1.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation ......................................... 12

         2.   The Risk of Maintaining Class Action Status Through Trial ............. 13

         3.   The Settlement is an Extraordinary Result for the Class .................... 13

         4.   The Extent of Discovery Completed and the Stage of Proceedings ... 15

         5.   The Experience and Views of Class Counsel ............................... 15

         6.   The Class Members' Positive Reaction to the Settlement ................. 16

         7.   The Rule 23(e)(2) Factors are Satisfied ................................... 16

             a)   The Class Representatives and Class Counsel Adequately Represented the Class ....................................................... 17

             b)   The Settlement Was Negotiated at Arm's Length ...................... 17

             c)   The Relief to the Class is Adequate ..................................... 19

             d)   The Settlement Treats Class Members Equitably ...................... 19

V.      CONCLUSION ..................................................................... 19

**Cases**

*Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*,
   No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245  (C.D. Cal. Jan. 25, 2021) ............ 11

*Campbell v. Facebook Inc.*,
   No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017)..................... 15

*Corona v. Sony Pictures Ent'mt., Inc.*,
   No. 14-cv-09600 RGK (C.D. Cal. 2016) ................................................................. 16

*Diaz v. Google LLC*,
   No. 5:21-cv-03080 (N.D. Cal. Aug. 4, 2022) ......................................................... 15

*Gaston v. FabFitFun, Inc.*,
   No. 2:20-CV-09534-RGK-E, 2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)............... 13

*General Tel. Co. v. Falcon*,
   457 U.S. 147 (1982) .............................................................................................. 19

*Gordon v. Chipotle Mexican Grill, Inc.*,
   No. 17-CV-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ............ 13

*Hashemi v. Bosley, Inc.*,
   No. CV 21-946 PSG (RAOX), 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022)........... 13

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)................... 15

*In re Google Plus Profile Litig.*,
   No. 518CV06164EJDVKD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ................. 15

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019)................................................................................. 12

*In re Linkedin User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................... 16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000).................................................................................. 17

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-MD-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ........................ 13

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ................ 14

*In re: Vizio, Inc., Consumer Privacy Litigation*,
   No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) ............................................ 16

*Kastler v. Oh My Green, Inc.*,
   No. 19-CV-02411-HSG, 2021 WL 3604714 (N.D. Cal. Aug. 13, 2021) ................... 20

*Koenig v. Lime Crime, Inc.*,
   No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D. Cal. Apr. 2, 2018) ............ 14

*Lim v. Transforce, Inc.*,
   No. LA CV19-04390 JAK, 2022 WL 17253907 (C.D. Cal. Nov. 15, 2022) ............. 20

*McDonald, et al. v. Kiloo A/S, et al.*,
   No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021) ...................................... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 18

*Officers for Just. v. Civ. Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................... 11

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ..................................................................... 12

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ..................................................................... 12

**Other Authorities**

Manual for Complex Litigation (Fourth) § 11.423 ............................................... 15

Manual for Complex Litigation (Fourth) § 13.12 ................................................. 15

**Rules**

Federal Rule of Civil Procedure 23(e) ................................................... 11, 13, 17

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court preliminarily approved the proposed Settlement, and the Settlement Administrator has disseminated notice to Class Members in accordance with the approved Notice Plan. Now, with the instant Motion, Plaintiffs respectfully request that the Court conduct a final review of the Settlement and approve it as fair, reasonable, adequate, and in the best interest of the Class.

After many months of hard-fought, arm's-length negotiations, including a full day mediation with experienced mediator Daniel Garrie, Esq., and extensive further negotiations between experienced counsel spanning nearly one year, Class Counsel, John Yanchunis of Morgan & Morgan, William B. Federman of Federman & Sherwood, Abbas Kazerounian of Kazerouni Law Group APC, Daniel S. Robinson of Robinson Calcagnie, Inc., and Patrick Keegan of Keegan & Baker LLP, secured an exceptional Settlement that provides significant cash payments to Class Members for their injuries and protects them against future risks caused by the Data Breach. As explained in greater detail below, based on the 26,949 Valid Claims processed to date, the Settlement is presently valued in excess of $15 million. The Settlement establishes a non-reversionary cash fund of $5 million and delivers further benefits to Class Members well in excess of that monetary fund in light of the additional value of benefits provided through the $4.5 million in remedial measures implemented by Smile Brands in response to this litigation, and the retail value of the Credit Monitoring and Identity Theft Insurance Services ("Credit Monitoring") available to each Class Member.

Through the Settlement, each Class Member is eligible to submit a claim for (1) two years of the Credit Monitoring, (2) up to $5,000 cash payments to Class Members for Out-of-Pocket Costs incurred due to the Data Breach, (3) cash payments of up to $125 ($25 per hour up to five hours) for Documented Time, and (4) a Monetary Payment for the alleged damages they suffered as a result of having their PII or PHI allegedly disclosed during the Data Breach (which includes the alleged damages under the California Confidentiality of

Medical Information Act, Cal. Civ. Code §§ 56, et seq.). Joint Decl. ¶¶ 36-37; Settlement Agreement ("SA") ¶ 78.

The Court-approved Notice Plan provided for dissemination of Class Notice by U.S. mail and the creation of a Settlement Website where Notice was provided during the Claims Period. SA ¶¶ 89-96; Declaration of Meagan Brunner ("Brunner Decl.") ¶¶ 5-6.) The Settlement Administrator believes approximately 94% of the Class Members received Class Notice and were provided opportunity to submit a claim during the Claims Period. (*Id.*)

The reaction from Class Members has been overwhelmingly positive and strongly supports final approval. The exclusion and objection deadlines were October 17, 2023. The Settlement Administrator received 68 requests for exclusion and no objections to the Settlement. In contrast, 27,528 claims have been submitted via the claims process. Brunner Decl. ¶ 8.

In light of the valuable benefits conveyed to Class Members and the significant risks faced through continued litigation, the terms of the Settlement are fair, reasonable, and adequate, and merit final approval.

## II. BACKGROUND

### A. The Data Breach and the Procedural History of this Action

In June 2021, Smile Brands began notifying affected individuals that it suffered an alleged ransomware attack on April 24, 2021, which affected certain of its systems and data that Plaintiffs allege contained their personally identifiable information ("PII") and Protected Health Information ("PHI"), including under the Health Insurance Portability and Accountability Act. Dkt. 1.

Following the Data Breach announcement, six putative class action complaints were filed against one or more of the Defendants or Smile Brands-Affiliated Dental Practices relating to the alleged Data Breach. Plaintiffs' counsel in the above-listed cases self-organized and ultimately proposed that the Court consolidate the cases and appoint interim class counsel. *See* Dkts. 26 and 35. The Court granted these stipulations, consolidated the

cases, and appointed John Yanchunis of Morgan & Morgan, William B. Federman of Federman & Sherwood, and Abbas Kazerounian of Kazerouni Law Group as Interim Co-Lead Counsel; and Daniel S. Robinson of Robinson Calcagnie and Patrick Keegan of Keegan & Baker as Interim Co-Liaison Class Counsel. *See* Dkts. 28, 39.

On March 3, 2022, Plaintiffs filed a Consolidated Class Action Complaint. Dkt. 36 and 38. Plaintiffs alleged unauthorized cybercriminals acquired, had access to, and viewed Plaintiffs' and putative absent class members' PII and/or PHI, including names, addresses, telephone numbers, dates of birth, Social Security numbers, personal financial information, government-issued identification numbers, health insurance information, personal health information, or diagnosis information.

On April 4, 2022, Defendants moved to dismiss the Consolidated Complaint (Dkt. 46) and strike the class allegations from the Consolidated Complaint (Dkt. 48). On May 2, 2022, in response to those motions, Plaintiffs filed an Amended Consolidated Class Action Complaint (Dkt. 51), pursuant to a stipulation by the Parties, which was entered by the Court on April 26, 2022 (Dkt. 50). Later, on May 22, 2023, Plaintiffs filed the Second Amended Consolidated Class Action Complaint (Dkt. 71), pursuant to a stipulation by the Parties, which was entered by the Court on May 15, 2023 (Dkt. 70).

**B. Settlement Negotiations and Mediation**

The Parties discussed early mediation after Plaintiffs filed their Consolidated Complaint and agreed to mediation after Plaintiffs amended the Complaint in response to Defendants' motions to dismiss and strike. On May 16, 2022, the Parties participated in a full-day mediation session before JAMS mediator Daniel Garrie, Esq. *See* Joint Declaration of Class Counsel ("Joint Decl.") ¶¶ 15, 27. In advance of the mediation, the Parties voluntarily exchanged confirmatory information and prepared and exchanged extensive mediation briefs. *Id.* Although the Parties were unable to reach a resolution at mediation, discussions following mediation resulted in an agreement in principle and the Parties entered into a Memorandum of Understanding on July 7, 2022. *Id.*

Since then, the Parties exchanged multiple drafts of the Settlement Agreement and

related documents and focused on resolving several disagreements concerning the terms of the Settlement Agreement. *Id.* ¶¶ 33-36. Plaintiffs also received confirmatory discovery from Defendants concerning the cause and scope of the Data Breach and Defendants' notification thereof as well as remedial measures implemented by Smile Brands in response to this litigation. *Id.* ¶ 28. Plaintiffs also secured multiple bids from competing settlement administrators and credit monitoring providers and worked through the process to select the administrator best suited for this Settlement. *Id.* ¶ 32. On June 23, 2023, the Parties finalized and executed the Settlement Agreement. Dkt. 78.

### C. Preliminary Approval and Plaintiffs' Fee Motion

On June 30, 2023, Class Counsel moved the Court to preliminarily approve the Settlement. Dkt. 77. The Court granted preliminary approval on August 4, 2023. Dkt. 83. Since the Preliminary Approval Order, Class Counsel worked alongside Simpluris to ensure the notice and claims process has gone smoothly for Class Members. Joint Decl. ¶ 52. The Settlement Administrator believes approximately 94% of the Class Members received Class Notice and were provided opportunity to submit a claim during the Claims Period. (*Id.* ¶ 5.)

On September 26, 2023, Plaintiffs filed their Motion for Award of Attorney's Fees and Costs, and Service Awards (the "Fee Motion") (Dkt. 84.) In the Fee Motion, Plaintiffs explained that the value of the Settlement had already exceeded $12.3 million (and it would likely continue to increase until the November 16, 2023 Claims Deadline), based on the $5 million non-reversionary Settlement Fund, the $4.5 million in remedial measures implemented by Smile Brands in response to this litigation, and the additional value of $2,875,556.22 of the Credit Monitoring offered to each Participating Class Member (based on 12,102 Credit Monitoring claims as of September 22, 2023), after deducting the cost of this benefit. SA ¶ 88. Based on the figures at the time of the Fee Motion, the requested attorneys' fees of $1.6 million amounts to approximately 12.9% of that Settlement Value.[1]

---

[1] Based on the figures as of December 18, 2023, the requested attorneys' fees amount to just 10.5% of the current estimated Settlement Value of $15,237,568.67. Joint Decl. ¶ 86.

In addition, Plaintiffs provided the Court with data sufficient to perform a lodestar cross-check, identifying the 1,522.4 hours and a conservatively calculated collective lodestar of $1,107,737.20, which represented a modest multiplier of 1.44 that is fair and reasonable in light of the significant risks Class Counsel faced, the contingent nature of representation, the complexity of the issues presented, and the excellent results achieved for the benefit of the Settlement Class.

Along with Plaintiffs' Fee Motion, each of the Class Representatives submitted a declaration detailing their efforts throughout the litigation in support of their request for the Court to grant modest Service Awards of $2,500 each to the Class Representatives to compensate them for the effort and risk entailed in pursuing this litigation.

## III. THE TERMS OF THE SETTLEMENT

### A. The Settlement Class and Release

The proposed Settlement Class is defined as:

> The approximately 1.5 million persons whose PII or PHI may have been acquired as a result of the alleged Data Breach and who are identified on the Settlement Class List as having been sent individualized, written notice of the alleged Data Breach. Excluded from the Settlement Class are: (1) the judges presiding over the Action, and members of their families; (2) the Defendants, their subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former officers, and directors, and (3) individuals who properly execute and submit a procedurally proper and timely Request for Exclusion prior to the expiration of the Opt-Out Period.

Settlement Agreement ("SA") ¶ 47.

In exchange for the Settlement's benefits, all Settlement Class Members will release any claims against Defendants based on one or more of the same factual predicates alleged in the Action. *Id.* ¶¶ 40, 63-64.

### B. The Settlement Benefits

The Settlement provides for a non-reversionary cash Settlement Fund of $5 million to provide meaningful relief, including cash payments to Settlement Class Members. SA ¶¶ 51, 67. The Settlement Fund shall be used by the Settlement Administrator to pay for (i) all Administrative Expenses; (ii) any Taxes; (iii) the cost of the Credit Monitoring and

Insurance Services; (iv) any Monetary Payments, Out-of-Pocket Costs Payments, and Documented Time Payments pursuant to the terms and conditions of Section IV.E.76 of the Settlement Agreement (SA ¶¶ 52, 77); (v) any court-approved Service Awards; (vi) any court-approved attorneys' fees and costs; and (vii) any other Settlement Benefits. *Id.*

### 1. The Credit Monitoring and Identity Theft Insurance Services

Each Participating Settlement Class Member who submits a valid claim are eligible to receive two years of credit monitoring and identity theft protection through Experian. (SA ¶ 77(a).) The Credit Monitoring will be provided by Experian and is the same product offered to Settlement Class Members following the announcement of the Data Breach, which includes the following benefits: 1-Bureau Credit Monitoring; Daily Credit Alerts - New Inquiries, New Accounts Created, Change of Address Requests Associated with Credit Account, Changes to Public Records, and Posting of Potentially Negative Information; Credit Report Upon Enrollment through Experian Bureau; Credit Report Daily Online or Quarterly Offline; No Hit Alerts; Customer and Fraud Resolution Support; Identity Theft Insurances up to $1 Million; Comprehensive Educational Resources; and ExtendCARE – Fraud Resolution Extends Beyond the Life of Initial Membership.[2] The Credit Monitoring and Insurance Services is valued at $9.99 per month for each Participating Settlement Class Member electing to receive that benefit. *See* Dkt. 77-4, Declaration of Robert Siciliano ("Siciliano Decl.") ¶ 5. For the two-year term (24 months), therefore, a single subscription is valued at $239.76. *Id.* ¶ 6. Accordingly, the value of this benefit to the Settlement Class is at least $3,632,551.01 for every one percent (1%) of Class Members receiving this benefit, before excluding the cost of that benefit. SA ¶ 88; Siciliano Decl. ¶ 7. There were 24,147 timely requests for Credit Monitoring. Brunner Decl. ¶ 9. Therefore, the value of this benefit to the Settlement Class is $5,737,568.67. Joint Decl. ¶¶ 43, 85.

---

[2] Settlement Class Members who are considered minors will instead be offered Experian's Minor Plus® credit monitoring service, which is specially tailored to provide services geared towards minors.

## 2. Cash Payments to Settlement Class Members

All Participating Settlement Class Members are eligible to receive a cash payment of up to $5,000 for reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach, and a Documented Time Payment of up to $125 for time spent addressing or remedying issues that are fairly traceable to the Data Breach, in the amount of $25 per hour for up to five hours of Documented Time. SA ¶ 77(c)-(d). Claims for Out-of-Pocket Costs and Documented Time must be supported by Reasonable Documentation and have been incurred on or after April 24, 2021. SA ¶ 77(c)-(d).

Each Participating Settlement Class Member will receive a check from the Settlement Fund for the alleged damages they suffered as a result of having their PII and PHI allegedly disclosed during the Data Breach, which includes the damages for the claims brought under the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, referred to as the Monetary Payment. SA ¶ 77(b). The check amount will depend on the participation rate for the Settlement and the amount will be each Participating Settlement Class Member's pro rata share of the remaining Net Settlement Fund, after all other Settlement Benefits have been paid for out of the Remaining Net Settlement Fund, including payment for all claims for Credit Monitoring and Insurance Services, Out-of-Pocket Costs Payments, and Documented Time Payments. *Id.* The following chart depicts an approximation of the Monetary Payment amounts before deducting the costs to provide the Credit Monitoring and Insurance Services, Out-of-Pocket Costs Payments, and Documented Time Payments:

| Participation Rate | Approx. Monetary Payment |
|---|---|
| 1% | $158.41 |
| 2% | $79.20 |
| 3% | $52.80 |
| 4% | $39.60 |
| 5% | $31.68 |

| | |
|---|---|
| 6% | $26.40 |
| 8% | $19.80 |
| 10% | $15.84 |

In the event that a Monetary Payment made to Participating Settlement Class Members would exceed one thousand dollars ($1,000.00), then the parties will seek guidance from the Court on how to proceed. *Id.* Participating Settlement Class Members will have the option of receiving Settlement Payments via electronic means made available by the Settlement Administrator. SA ¶ 77. Participating Settlement Class Members who do not exercise this option will receive their Settlement Payment via physical check sent by U.S. Mail. *Id.* Settlement Payments will be reduced on a *pro rata* basis, if necessary. *Id.* ¶ 82. Class members receiving a Monetary Payment via physical check will have ninety (90) days following distribution to deposit or cash that check. SA ¶ 83. Likewise, Participating Settlement Class Members with Approved Claims who receive the Credit Monitoring and Insurance Services will have ninety (90) days following distribution of the enrollment instructions to sign up for the services. *Id.* ¶ 79.

To the extent any monies remain in the Net Settlement Fund more than one hundred and fifty (150) days after the distribution of Settlement Payments to the Participating Settlement Class Members, a subsequent Settlement Payment will be evenly made to all Participating Settlement Class Members with Approved Claims who deposit or cash their benefit check, provided that the average check or electronic deposit amount is equal to or greater than five dollars and no cents ($5.00). (*Id.* ¶ 83.) The distribution of this remaining Net Settlement Fund shall continue to all Participating Settlement Class Members with Approved Claims who deposit or cash their residual benefit check until the average check amount in a distribution is less than five dollars and no cents ($5.00). (*Id.*) Any Residual Funds remaining after this process will be used to extend the Credit Monitoring and Insurance Services to Participating Settlement Class Members receiving that benefit for as long as possible. (*Id.*) Subject to Court approval, any remaining funds after that will be distributed to the Non-Profit Residual Recipient, Electronic Frontier Foundation, a 26

U.S.C. § 501(c)(3) non-profit organization whose work relates directly to the subject matter of the Action and benefits Class Members. Dkt. 77-3, Declaration of Cindy Cohn, ¶ 13; SA ¶¶ 27, 81. No portion of the Settlement Fund shall revert or be repaid to Defendants after the Effective Date. SA ¶ 86.

### 3. Smile Brands' Remedial Measures

In addition to monetary relief and as a result of this Action and further described in the Settlement Agreement, to date Smile Brands has spent in excess of $4.5 million on remedial efforts including:

a. Offering Settlement Class Members one year, and two years in some cases, of identity protection and identity restoration services, provided with the written notification of the alleged Data Breach;

b. Changing passwords for certain access levels;

c. Enhancing endpoint protection and monitoring using Crowdstrike;

d. Distributed Denial of Service ("DDoS") protection;

e. Web Application Firewall protection;

f. Multi-factor authentication for VPN access;

g. Advanced threat protection for e-mails;

h. Implementing a privilege access management (PAM) solution;

i. Implementing a host vulnerability management solution;

j. Outsourcing 24x7 Security Operations Center (SOC) services and a Security Incident & Events Management (SIEM) solution to an experienced third-party provider;

k. Implementing a Cloud Security Posture Management (CSPM) solution;

l. Performing a comprehensive penetration test with a third party;

m. Refreshing the enterprise information technology security policies;

n. Hiring a Vice President of Security to augment the existing team led by the Chief Information Officer; and

o. Purchasing a Data Loss Protection (DLP) solution, which it is currently

implementing.

*See* SA ¶ 87. The Parties agree that Class Representatives, Class Counsel, and this litigation were a substantial factor in these remedial efforts, the value of which is a meaningful benefit to all Settlement Class Members, regardless of whether they submit a claim, as well as to other Smile Brands patients who are not Class Members.

### 4. Attorneys' Fees and Costs and Service Awards

On September 26, 2023, Plaintiffs filed their Fee Motion (Dkt. 84), through which they seek an award of $1,600,000.00 in attorneys' fees and $24,993.28 in costs, and Service Awards of $2,500 to each of the five Class Representatives. The requested awards are supported by the results achieved, the risk of continued litigation, the Settlement Value, the quality of Counsel's representation, awards in comparable cases, the contingent nature of the representation, the response of the Class, and the time and expenses incurred by Plaintiffs' Counsel. (*Id.*) The Notice informed Class Members that Class Counsel would seek such an award of attorneys' fees and costs and service awards for the Class Representatives, and the Fee Motion was posted on the Settlement Website. Importantly, no objections to any of the requested awards have been received. Brunner Decl. ¶ 14.

### 5. Total Value of the Settlement

The Total Settlement Value, which consists of the $5 million non-reversionary Settlement Fund, the value of Credit Monitoring, and the amount allocated for Defendants' data security practices, is in excess of $15 million. The $5 million Settlement Fund will be used to provide the benefits set forth above, as well as a robust class notice, settlement administration, and any court-approved Service Awards and Fee Award and Costs.

The Claims Deadline was November 16, 2023. As of December 18, 2023, 24,147 claims for Credit Monitoring have been received, meaning that benefit provides an additional value of $5,737,568.67 (after subtracting the cost of providing such services).[3]

---

[3] 24,147 Credit Monitoring and Insurance Services claims as of December 18, 2023 × 24 months × $9.99 value per month = $5,789,484.72 - $51,916.05 (Credit Monitoring cost) = $5,737,568.67 (actual value of Credit Monitoring based on December 18, 2023 figures).

When including this with the $5 million Settlement Fund and the $4.5 million allocated in business practice changes, the Total Settlement Value is presently $15,237,568.67. Joint Decl. ¶ 86.

## IV.   FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE

In assessing whether to grant final approval, the Court analyzes (1) the propriety of granting class certification for purposes of settlement, (2) the fairness of the settlement, and (3) the reasonableness of the fees, costs, and service award requested. *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, No. 2:18-cv-08348-CJC-FFM, 2021 WL 606245, at *1 (C.D. Cal. Jan. 25, 2021). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

### A. Class Certification

The Court's Preliminary Approval Order (Dkt. 83) certified the Settlement Class for Settlement purposes. Given that nothing has changed since the Court's Preliminary Approval Order to call the Court's conclusions regarding class certification into question, Plaintiffs respectfully request that the Court finally certify the Settlement Class.

### B. The Settlement is Fundamentally Fair, Reasonable, and Adequate

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits.").

Approval of class action settlements is governed by Federal Rule of Civil Procedure 23(e), and requires court approval. Courts must "determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and quotation marks omitted). In considering whether this standard is met, courts consider various factors, including (1) the strength of the plaintiff's case, (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk of

maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, and (7) the reaction of class members to the proposed settlement. *Id*.

### 1. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation

Plaintiffs are confident that they would succeed if this case proceeded to trial, and that they would be able to prove that Smile Brands' inadequate security was the cause of the Data Breach and of Plaintiffs' alleged damages. However, Smile Brands vigorously disputes all such allegations, and the risk, expense, and complexity of further litigation is significant. Joint Decl. ¶¶ 13, 81. All class actions involve a high level of risk, expense, and complexity, but the emerging and evolving area of data breach litigation is especially risky and complex. *See Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) ("[D]ata breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury."); *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, *1 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky.").

Although Plaintiffs firmly believe their liability case is strong and that class certification is warranted, it is uncertain whether the Court ultimately would grant certification, deny a motion for summary judgment filed by Smile Brands, or ever find that Plaintiffs are entitled to damages. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for Class Members

because the Court may find the fact and amount of damages are uncertain. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *3 (C.D. Cal. Apr. 2, 2018) (approving data breach settlement); *see also In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *1 (N.D. Ga. Aug. 23, 2016) ("[E]stablishing causation . . . has been a barrier to consumer plaintiffs' success" in data breach litigation).

### 2. The Risk of Maintaining Class Action Status Through Trial

As pointed out above, certification would have been hotly disputed and the outcome uncertain. A district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and is "subject to revision," so Smile Brands would have been able to move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978), *superseded on other grounds by rule*.

A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to win class certification, there would remain a risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Class, possibly for years.

### 3. The Settlement is an Extraordinary Result for the Class

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-

13

03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

The Settlement Fund here ($5 million), and the total value of the Settlement (in excess of $15 million), in relation to the size of the Settlement Class (1,515,078 Class Members), compare favorably to these and other class action settlements alleging violations of privacy and security. *See e.g.*, *In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt., Inc.*, No. 14-cv-09600 RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users).

The proposed Settlement provides equivalent, if not greater, relief to the Settlement Class Members compared to other approved data breach settlements. The $5 million Settlement Fund alone comes to a $3.30-per-individual value based on the approximately 1,515,078 Settlement Class Members identified on the Settlement Class List, which is comparable or superior to other recent data breach settlements (*see, e.g.*, *In Re: 21st Century Oncology Customer Data Security Breach Litigation* (M.D. Fl. 2021, No. 8:16-md-2737-MSS-AEP) ($3.64); *In Re: Banner Health Data Breach Litigation* (D. Ariz. 2020, No. 2:16-cv02696-PHX-SRB) ($3.07); *Adlouni v. UCLA Health Systems Auxiliary, et al.*

(Cal. Super. Ct. 2019, No. BC589243) ($1.67); *In re Experian Data Breach Litigation* (C.D. Cal. 2019, No. 8:15-cv-01592-AG) ($1.47); *In re Anthem, Inc. Data Breach Litigation* (N.D. Cal. 2017, No. 5:15-md-02617-LHK) ($1.39)), even without accounting for the true Settlement value, which includes the value of the Credit Monitoring and Insurance Services and business practice changes.

### 4. The Extent of Discovery Completed and the Stage of Proceedings

Class Counsel obtained ample confirmatory information through settlement negotiations and confirmatory discovery that provided sufficient information to gauge the strengths and weaknesses of Plaintiffs' claims and the probability of success on the merits. Joint Decl. ¶ 28. The information provided by Smile Brands was appropriately targeted at information relevant to the Settlement. *Id.; see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("[F]ormal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement."); Manual for Complex Litigation (Fourth) § 13.12 (recognizing that the benefits of settlement are diminished if it is postponed until discovery is completed and approving of targeting early discovery at information needed for settlement negotiations). Informal discovery is a recognized method of minimizing the cost, delay, and burden associated with formal discovery. *See* Manual for Complex Litigation (Fourth) § 11.423.

Importantly, the stage of the proceedings allowed Plaintiffs to maximize the recovery for the class and provide resources that may otherwise be spent on litigation to be directed to providing immediate benefits to the Settlement Class. By resolving this case at this stage of the proceedings, Plaintiffs have maximized the recovery to the Class and secured an amount that is favorable compared to other approved data breach settlements.

### 5. The Experience and Views of Class Counsel

Plaintiffs are represented by Class Counsel who have extensive experience and expertise in prosecuting complex class actions, including privacy class actions and, specifically, such actions arising out of data breaches compromising PHI and PII. *See* Joint

Decl. ¶¶ 56-80. The Settlement provides Class Members with immediate, certain, and meaningful relief that directly addresses the issues they have experienced, or might experience, relating to the Data Breach. Moreover, the language of the release is properly tailored and limited to the claims at issue. SA ¶¶ 40, 63-64. Class Counsel fully endorse the Settlement as fair, reasonable, and adequate and in the best interests of the Class. Joint Decl. ¶¶ 13, 81-82.

### 6. The Class Members' Positive Reaction to the Settlement

The Objection Deadline and Opt-Out Period passed on October 17, 2023, and the Settlement Administrator received only 68 Requests for Exclusion and no objections (Brunner Decl. ¶¶ 13-14), demonstrating the positive reaction of the Settlement Class to this Settlement. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."). The Claims Period closed on November 16, 2023, and as of December 1, 2023, a total of 26,949 valid and timely claims have been received. Brunner Decl. ¶ 8. This amounts to a claims rate of 1.8% out of the approximately 1,515,078 Settlement Class Members identified on the Settlement Class List. *Id*. The Participating Settlement Class Members' claims included 24,147 requests for Credit Monitoring. *Id*. ¶ 9. In addition, 807 hours of Documented Time totaling $20,175.00 have been approved thus far, as well as $14,017.30 in Out-of-Pocket Costs. *Id*. ¶¶ 11-12. Finally, each of the 26,949 valid and timely claims will receive a Monetary Payment, which, based on the current December 18, 2023 figures, and assuming the Court awards Plaintiffs' requested fees, costs, and Service Awards, is expected to be $88.18 to each Participating Settlement Class Members. *Id*. ¶ 10. An excellent result.

### 7. The Rule 23(e)(2) Factors are Satisfied

Pursuant to Rule 23(e)(2), the Court also must find the settlement "fair, reasonable, and adequate" after consideration of the following factors:

(A) the class representatives and class counsel adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
  (i) the costs, risks, and delay of trial and appeal;
  (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
  (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### a) The Class Representatives and Class Counsel Adequately Represented the Class

Plaintiffs and Class Counsel vigorously and adequately represented the Settlement Class. Plaintiffs do not have any conflicts of interest with the absent Class Members, as their claims are coextensive with those of the Class Members. *General Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, fn. 13 (1982). As the Court recognized in its Preliminary Approval Order, "there are questions of law or fact common to the Settlement Class; the Class Representatives' claims are typical of those of Settlement Class Members; and the Settlement Class Representatives will fairly and adequately protect the interests of the Settlement Class." Dkt. 83, ¶ 8. Further, through the litigation to date, Plaintiffs and Class Counsel submit and understand their responsibility in serving as Class Representatives and Class Counsel and have committed themselves to vigorously pursuing litigation on behalf of the putative class, through the Effective Date and ultimate conclusion of the Settlement. *See* Joint Decl. ¶¶ 54-55; Dkt. 84-1, Ex. 6 (Declarations of Plaintiffs ¶ 8).

### b) The Settlement Was Negotiated at Arm's Length

The Settlement Agreement was reached after nearly one year of hard-fought, arm's-length negotiations, including a full day mediation with an experienced mediator, conducted by experienced attorneys. Joint Decl. ¶¶ 15, 27; *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 948 (finding that engaging in formal mediation with an

experienced mediator weighs "in favor of a finding of non-collusiveness"). Class Counsel have significant experience prosecuting data breach consumer class actions and are well-informed of the legal claims at issue and the risks of this case. *See* Joint Decl. ¶¶ 56-80, Exs. 1-5. After the parties reached an agreement on the material terms, the parties negotiated and entered into a Memorandum of Understanding, then spent many months negotiating the language of the Settlement, the related exhibits, and developing the Notice Plan. (*Id.*). The Settlement easily withstands "great[] scrutiny," (*id.* at 949) because 1) the attorney fees were negotiated after all other materials terms of the settlement, 2) this is a non-reversionary cash settlement, 3) the majority of the cash being provided by Smile Brands for this Settlement will be provided to the Settlement Class, and 4) the Settlement is in no way conditioned on the approval of the fee request. SA ¶¶ 110-111; *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2021 WL 3604714, at *9 (N.D. Cal. Aug. 13, 2021) ("given that counsel will not receive a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court does not find that the clear sailing provision weighs against preliminary approval."); *see also Lim v. Transforce, Inc.*, No. LA CV19-04390 JAK, 2022 WL 17253907, *12 (C.D. Cal. Nov. 15, 2022) (granting preliminary approval and finding no collusion despite clear-sailing agreement where non-reversionary settlement reached under supervision of mediator). In addition, as discussed above and in greater detail in Plaintiffs' Fee Motion (Dkt. 84), the requested award of attorneys' fees is within the Ninth Circuit's 25% benchmark for common fund cases, and represents a modest lodestar multiplier of 1.44, which is fair and reasonable in light of the significant risks Counsel faced, the contingent nature of the case, the complexity of the issues presented, and the excellent results achieved. Based on current claims figures, Class Counsel are seeking just 10.5% in fees of the current estimated Settlement Value as of December 18, 2023.[4]

---

[4] $1,600,000 (Class Counsel's Fee Request) ÷ 15,237,568.67 (Total Settlement Value as of December 18, 2023) = 10.5% (Percentage of Fees Requested of Total Settlement Value)

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 8:21-CV-01886-DOC-ADS

### c) The Relief to the Class is Adequate

As set forth above, the relief provided by the Settlement is reasonable and adequate, particularly in light of the risks and delay that further motion practice, trial, and associated appeals would entail. The Settlement is presently valued in excess of $15 million, including the $5 million non-reversionary Settlement Fund, $4.5 million in remedial measures implemented by Smile Brands in response to this litigation, and the $5,737,568.67 in value that the Credit Monitoring and Identity Theft Insurance Services provides to Participating Class Members.

### d) The Settlement Treats Class Members Equitably

The Settlement treats Class Members equitably relative to each other and their claims. All Class Members are eligible for to receive a cash payment of up to $5,000 for reimbursement of Out-of-Pocket Costs that are fairly traceable to the Data Breach, and a cash payment of up to $125 for time spent addressing or remedying issues that are fairly traceable to the Data Breach, in the amount of $25 per hour for up to five hours of Documented Time. SA ¶ 77(c)-(d). All Class Members' claims for Out-of-Pocket Costs and Documented Time must be supported by Reasonable Documentation showing that it was incurred on or after April 24, 2021. *Id.* ¶ 77(c)-(d). In addition, all Class Members who submit a valid claim are eligible to receive two years of credit monitoring and identity theft protection through Experian (*id.* ¶ 77(a)), and a pro rata Monetary Payment expected to be approximately $88.18 based on current claims figures, irrespective of whether they submit documentation with their claim. Brunner Decl. ¶ 10. Accordingly, the Settlement treats all Class Members equitably.

## V.     CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Final Approval and enter the proposed final judgment and order consistent with the terms of the Settlement in this case.

///

///

Respectfully submitted,

Dated: December 18, 2023      FEDERMAN & SHERWOOD

By: /s/ *William B. Federman*
William B. Federman

Dated: December 18, 2023      MORGAN & MORGAN COMPLEX
LITIGATION GROUP

By: /s/ *John A. Yanchunis*
John A. Yanchunis

Dated: December 18, 2023      KAZEROUNI LAW GROUP, APC

By: /s/ *Abbas Kazerounian*
Abbas Kazerounian

Dated: December 18, 2023      ROBINSON CALCAGNIE

By: /s/ *Daniel S. Robinson*
Daniel S. Robinson

Dated: December 18, 2023      KEEGAN & BAKER, LLP

By: /s/ *Patrick N. Keegan*
Patrick N. Keegan

*Class Counsel*

## **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that this brief contains 6,454 words, which complies with L.R. 11-6.1.


Dated: December 18, 2023                    /s/    *Abbas Kazerounian*
                                            Abbas Kazerounian

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2023, I caused the foregoing to be filed electronically using the Court's electronic case filing (ECF) system, which will automatically send a notice of electronic filing to the email addresses of all counsel of record.

Dated: December 18, 2023          */s/    Abbas Kazerounian*
                                        Abbas Kazerounian